# U.S. BANKRUPTCY COURT
## District of South Carolina

Case Number: **16-01342-jw**

### ORDER ON MOTION TO DETERMINE FINAL CURE AND PAYMENT

The relief set forth on the following pages, for a total of 17 pages including this page, is hereby ORDERED.

**FILED BY THE COURT**
**05/07/2021**



Entered: 05/07/2021

*/s/ John E. Waites*

US Bankruptcy Judge
District of South Carolina

## UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| IN RE:<br><br>Toni Ann Fivecoate,<br><br>                                                  Debtor. | C/A No. 16-01342-JW<br><br>Chapter 13<br><br>**ORDER ON MOTION TO DETERMINE FINAL CURE AND PAYMENT** |

This matter comes before the court on the motion of the debtor, Toni Ann Fivecoate ("Debtor"), seeking a Determination of Final Cure of all required post-petition amounts, pursuant to Bankruptcy Rule 3002.1(h) ("Motion").[1] Present at the hearing on the Motion were the Debtor, her counsel, and the attorney for the mortgage creditor, PHH Mortgage ("PHH")[2]. No other party appeared. A Response to the Motion was filed by Creditor on March 25, 2021 ("Response"), requesting time to research the matter and requesting that a hearing be scheduled.

After considering the testimony presented at the hearing, together with the record and other matters properly before the Court, and pursuant to applicable legal authorities, the Court makes the following findings of fact and conclusions of law:[3]

**FINDINGS OF FACT**

1.     The Debtor filed a petition under Chapter 13 of the Bankruptcy Code on March 18, 2016.

---

[1]     The motion asked the Court to determine that all post-petition payments had been made through February 2021. Thereafter, monthly payments for March and April 2021 came due. Debtor testified that those payments had been made. PHH did not present any testimony that contradicted Debtor's statements.

[2]     At the time of filing the Chapter 13 Petition, the mortgage loan was being serviced by Ocwen Loan Servicing. In June 2019, Ocwen Loan Servicing "joined forces" with PHH.

[3]     To the extent any of the following Findings of Fact constitute conclusions of law, they are adopted as such, and to the extent any of the following Conclusions of Law constitute findings of fact, they are so adopted.

1

2. On July 25, 2016, Debtor's mortgage creditor, Deutsche Bank National Trust c/o Ocwen Loan Servicing LLC ("Ocwen"), filed its timely proof of claim asserting a prepetition arrearage in the amount of $15,838.60.

3. On May 10, 2016, the Court entered a Confirmation Order confirming Debtor's chapter 13 plan which provided for treatment of Ocwen's secured claim under 11 U.S.C. § 1322(b)(5) including the curing of prepetition arrearage through Trustee disbursements and the direct payment of ongoing monthly obligations under the loan by Debtor.[4]

4. On February 3, 2021, the Trustee filed the Notice of Final Cure indicating that the prepetition arrearage claim had been paid in full.

5. PHH, as the successor to Ocwen, acknowledged in its response to the Trustee's Notice of Final Cure Payment that the prepetition amount had been cured, pursuant to the terms of the Debtor's confirmed Chapter 13 Plan.

6. PHH asserted in its Response to the Trustee's Notice of Final Cure Payment that the account was contractually due for November 1, 2020, in the total amount of $2,147.11. According to the payment history attached to the Creditor Response, Debtor did not make a post-petition payment from June 2019 through October 2019. Otherwise, monthly post-petition payments were made throughout the case.

7. On May 8, 2019, Debtor received correspondence from Ocwen providing notice that Ocwen would be joining forces with PHH. The notice stated that the records indicated that the mortgage account was paid ahead. The May 8, 2019 correspondence also stated, "The monthly payment that is automatically drafting from a designated financial institution will continue; however,

---

[4] Further references to the Bankruptcy Code (11 U.S.C. §§ 101, *et al.*) shall be by section number only.

**please note that PHH will only begin drafting the monthly payment once the account is no longer paid ahead.**" (emphasis in original).

8. On June 7, 2019, Debtor received correspondence from PHH again stating that the account was paid ahead. Specifically, the June 7, 2019 correspondence stated that the next monthly payment was due on October 1, 2019. Again, this correspondence stated, "The monthly payment that is automatically drafting from a designated financial institution will continue; however, **please note that PHH will only begin drafting the monthly payment once the account is no longer paid ahead.**" (emphasis in original).

9. During this time, PHH's website for Debtor's account stated that Debtor was due for the November 1, 2019 payment.

10. It appears from the payment history provided by PHH as part of the Response that as of the dates of the May 8, 2019 and June 7 Correspondence, Debtor had paid ahead only two additional post-petition payments, making the account due for the August 1, 2019 payment.[5]

11. At all times during the pendency of the Chapter 13 case, the Debtor made the post-petition payments pursuant to an automatic draft from her checking account. When Ocwen and PHH joined forces, Debtor was required to change the automatic draft to reflect the change in payee.

12. Debtor contacted PHH regarding the correspondence. Over the course of several telephone conversations with PHH's representatives, Debtor was told that the correspondence was accurate and that the account was in fact paid ahead to the November 1, 2019 payment. Debtor's testimony on these conversations was credible as she recalled particular details regarding the call including the names of PHH's representatives to which she spoke.

---

[5] Despite PHH's statements in the filed joint statement of dispute that "debtor had not made any extra payments on the account," it appears, based upon PHH's own payment history, that Debtor made additional monthly payments in October 2016 and February 2018, which resulted in the Debtor being paid two months ahead upon the application of her payment made on May 1, 2019.

3

13. Based on Debtor conversations with multiple PHH representatives, Debtor set up an automatic draft for PHH in September 2019, to commence with the November 1, 2019, payment.

14. In February 2020, Debtor received a refund of an escrow overpayment in the amount of $687.85 from PHH.

15. On or about March 8, 2021, Debtor received a refund of an escrow overpayment in the amount of $963.99 from PHH.

16. On March 26, 2021, PHH unilaterally cancelled the automatic draft, after the March 2021 payment was drafted. Debtor paid the April 2021 payments via telephone but was advised by PHH's representatives that the account could no longer be accessed.

17. PHH did not present any evidence or testimony at the hearing, although its attorney stated that the Trustee's disbursements were incorrectly applied to post-petition obligations and that the accounting issue has now been corrected, resulting in the past due amounts asserted in the Response.

18. During the pendency of the Chapter 13 case, PHH did not file any Notice of Fees, Expenses, and Charges under Bankruptcy Rule 3002.1(c)

19. On February 23, 2021, a discharge order was entered but was subsequently administratively vacated after PHH filed its Response.

## CONCLUSIONS OF LAW

Rule 3002.1 establishes procedures that were adopted in 2011 to assist chapter 13 debtors in the implementation of their bankruptcy plans and to ensure the tracking of all payments made on a mortgage secured by the debtor's principal residence during the course of the bankruptcy case. Under Fed. R. Bankr. P. 3002.1(g), within 21 days after the Trustee's service of a Notice of Final Cure Payment, the holder of certain mortgage claims must file a statement indicating "(1) whether it agrees

that the debtor was paid in full the amount required to cure the default on the claim, and (2) whether the debtor is otherwise current on all payments consistent with § 1322(b)(5) of the Code." If the debtor or chapter 13 trustee contest the amounts stated in the mortgage creditor's response to the notice of final cure payment, they may file a motion to "determine whether the debtor has cured the [prepetition] default and paid all required post-petition amounts." Fed. R. Bankr. P. 3002.1(h) (2021).

While there is no dispute that Debtor cured the prepetition default as part of her confirmed plan, the parties dispute whether Debtor has paid all required post-petition amounts during the course of her confirmed plan. Debtor contests that she is responsible for three post-petition monthly payments currently asserted by PHH in the Response and takes the position that the Court should find that she has made all required post-petition payments due to misrepresentations made by PHH that were relied upon by Debtor.[6] Specifically, Debtor received multiple correspondence from PHH in 2019 indicating that she was not only current on the loan but that she had paid ahead until the October 1, 2019 payment. She verified this information in telephone calls with multiple representatives of PHH who consistently and repeatedly stated she was actually paid ahead on the loan with the next payment being due on November 1, 2019 and that it was not necessary for her to make a further payment on the loan during that period. In addition, without Debtor's consent, PHH affirmatively discontinued Debtor's auto-draft of payments, her primary mode of payment, during this five-month period until the Debtor was no longer considered ahead on her payments in PHH's records. Upon reliance on this representation, Debtor did not attempt to make additional effort to make these monthly payments. Thereafter, PHH continued to treat Debtor's loan as current until

---

[6] The Response indicated that Debtor is due for four payments; however, one of these payments was the payment due for February 2021, which remained in the loan's grace period when the Trustee filed the Notice of Final Cure Payment. Therefore, this payment is not at issue in this matter. Further, Debtor uncontradicted testimony indicated that she has made the payment due for the February 2021.

5

nearly two years later when it filed the Response, alleging that Debtor had not made the three post-petition payments (August 2019 through October 2019 payments). Around the same time as the filing of the Response, PHH again discontinued Debtor's auto-draft of monthly payments it appears on the basis that the loan was delinquent. Debtor testified that PHH made it very difficult to make a payment on the loan after it discontinued her auto-draft payment but that she continued to make her monthly payments.

PHH did not dispute Debtor's allegations in any respect. Instead, it asserts that its misstatements to Debtor about the payment status of her loan were its error due to a misapplication of payments required under the confirmed plan,[7] but that Debtor is nevertheless bound by the terms and obligations of the mortgage note, such that PHH should not be precluded from collecting the three post-petition payments in dispute from Debtor after the conclusion of her bankruptcy case. In short, PHH asserts that "[g]iven that debtor had not made any extra payments on the account, Debtor should not have credibly thought their account was current in the bankruptcy."

**I.    Equitable Estoppel**

Debtor argues that PHH should be equitable estopped from collecting the amounts asserted as due in the Response. Specifically, Debtor asserts that she did not make certain monthly mortgage payments in 2019 in reliance upon PHH's incorrect statements about the amount due on the loan which is now affecting Debtor's ability to receive a discharge.[8]

"It is generally held that a representation of past or existing fact made to a party who relies upon it reasonably may not thereafter be denied by the party making the representation if permitting

---

[7]    The error resulted in PHH misreporting that Debtor was paid ahead five months on the loan when she was in fact only paid ahead by two months at the time. As a result of the misrepresentations, Debtor did not make three months of post-petition payments.

[8]    In *In re Dowey*, 580 B.R. 168 (Bankr. D.S.C. 2017), the Court held that the failure to make all post-petition maintenance payments to a residential creditor under a cure and maintain plan under § 1322(b)(5) was a failure to make "payments under the plan" under § 1328(a) and prohibited a debtor from receipt of a discharge under that section.

6

the denial would result in injury or damage to the party who so relies." *Representations made enforceable by equitable estoppel*, 4 WILLISTON ON CONTRACTS § 8:3 (4th ed.). "Equitable estoppel has been used in instances where representations have been by words, conduct, or silence, and its use is designed to work as a protection or shield, not to bring a positive gain to a party." *In re Burris*, C/A No. 01-00776-W, slip op at 4 (Bankr. D.S.C. Aug. 31, 2001) (citing *Faulkner v. Millar*, 460 S.E.2d 378, 381 (S.C. 1995); *Hubbard v. Beverly*, 15 S.E.2d 740,741 (S.C. 1941); *Representations made enforceable by equitable estoppel*, 4 WILLISTON ON CONTRACTS § 8:3 (4th ed.)). "Equitable estoppel occurs where a party is denied the right to plead or prove an otherwise important fact because of something which he has done or failed to do." *Parker v. Parker*, 443 S.E.2d 388, 391 (S.C. 1994). Estoppel can "arise even though there was no intention by the party to relinquish or change any existing rights." *Id.*

> The Fourth Circuit Court of Appeals has stated:
>
> Under South Carolina law, the doctrine of equitable estoppel applies when the party to be estopped (1) engages in "conduct which amounts to a false representation, or conduct which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) [has] the intention that such conduct shall be acted upon by the other party; and (3) [has] actual or constructive knowledge of the real facts."

*First Fin. Ins. Co. v. Brumbaugh*, 553 App'x 282, 285 (4th Cir. 2014) (quoting *Strickland v. Strickland*, 650 S.E.2d 465, 470 (S.C. 2007)) (alterations in original).

In the present matter, PHH's statements to Debtor made in 2019 amounted to false representations regarding the status of Debtor's mortgage loan, which are inconsistent with PHH's subsequent assertions made in the Response. PHH, through its representatives, repeatedly indicated to Debtor at that time that she was due for the November 2019 mortgage payment and that she was not required to make payments for that period. However, now, PHH asserts that she was required to make those payments and that three of those payments remain outstanding.

7

Further, it is clear that PHH had the intention that Debtor act on the representation from PHH's statements in the correspondence and in-person calls, as well as PHH's decision to discontinue Debtor's auto-draft payment until the loan was "no longer paid ahead." Finally, as the servicer of the loan and the party in control of the account and the application of payments, PHH had constructive knowledge of the real facts of the situation. Further, PHH should have been placed on alert of any issue to investigate as Debtor inquired on multiple occasions about the appropriate date of the next payment in 2019. Therefore, the Court finds that PHH's conduct in the present matter meet the requirements for equitable estoppel under South Carolina law.

However, the Court's inquiry does not conclude with the review of PHH's conduct. The party asserting estoppel must also show: "'(1) a lack of knowledge and the means of knowledge of truth as to facts in question; (2) justifiable reliance upon the conduct of the party estopped; and (3) prejudicial change in the position of the party claiming estoppel.'" *Clear Channel Outdoor v. City of Myrtle Beach*, 642 S.E.2d 565, 568 (2007) *(*quoting *Evins v. Richland County Historic Preservation Commission,* 341 S.C. 15, 532 S.E.2d 876 (2000)).

This Court has previously addressed a similar factual situation in *In re Burris*, C/A No. 01-00776-W, slip op. (Bankr. D.S.C. Aug. 31, 2001), in which joint debtors objected to the amount of a vehicle creditor's proof of claim, alleging that the creditor was equitably estopped from claiming a higher balance due to an error in the payment coupon book provided to the debtors by the creditor. *Id.* at 1-2. Specifically, the coupon book inverted certain numbers in the amount due, resulting in the debtors making and the creditor accepting a payment of approximately $60 less than what was required under the loan contract over a period of many years. *Id.* at 2. Under the circumstances in *Burris*, the Court found that the first element of equitable estoppel was met because the debtors lacked knowledge or the means of knowledge of the truth. *Id.* at 5. Specifically, the Court noted that

8

while both the creditor and debtors had copies of the loan contract, the creditor created confusion and misled the debtors by sending the debtors a payment book with incorrect monthly payment amounts and with the intention the debtors were to rely on and use the payment book. *Id.* Further, the Court noted that because the creditor did not hold the debtors in default for the short payments, the debtors had no reason to consult the contract. *Id.*

In the present matter, PHH not only provided correspondence with the incorrect next due date, but its representatives also repeatedly and directly advised Debtor that it was not necessary to make further post-petition payments during that period, which clearly and blatantly misled Debtor. The mortgage creditor, as a sophisticated party who handles the collection and servicing of a large volume of mortgage loans, is in a far better position to properly account for the application of payments than a consumer debtor. Further, because PHH took no action to report or collect on these payments, such as filing a motion for relief, for a period of almost two years, Debtor had no reason to consult the loan contract or question otherwise. Therefore, the Court finds the first element of equitable estoppel is satisfied in this matter.

As to the second element, the Court in *Burris* found that by making payments consistently in the amount listed in the payment coupon book, the debtors demonstrated reliance on the creditor's misstatements. *Id.* Likewise, in the present matter, the record clearly demonstrates that Debtor actually relied on PHH's misrepresentations. The only time that Debtor did not make consistent payments to PHH during the course of her five-year bankruptcy case was after she received the misrepresentations from PHH through its correspondence, website, and the statements of its representatives that the loan was paid several months in advance. Debtor immediately resumed making timely payments after that period passed when PHH resumed the auto-draft payments for the loan. Considering the unequal positions of the parties, Debtor was justified in relying on PHH's

9

statements about the status of the loan. It is apparent to the Court and the evidence is clear and uncontested that Debtor would have made the payments but for PHH's actions and misrepresentations. Therefore, the Court finds that Debtor has satisfied the second element of equitable estoppel.

The final element to establish equitable estoppel is a prejudicial change in position by the party asserting estoppel. "The essential element of estoppel is prejudice to the party [asserting estoppel]." *Parker*, 443 S.E.2d at 391. The circumstances and prejudice established by the evidence in this matter are of a much more significant degree than that in *Burris*.[9]

First, the present matter arises post-confirmation <u>after</u> Debtor has completed all payments under the plan to be paid to the Chapter 13 Trustee and as Debtor requests her bankruptcy discharge. As a consequence of PHH's misrepresentations and failure to timely correct its misrepresentation until the eve of the closing of Debtor's case, Debtor is, absent the Court finding that she is current on PHH's loan, prohibited from receiving a discharge as to any of her creditors under § 1328(a) due to failure to make all payments under the plan, including all post-petition payments to be paid directly to PHH during the term of the plan.[10] *See In re Dowey*, 580 B.R. 168 (Bankr. D.S.C. 2017) (prohibiting a discharge under § 1328(a) when the debtor fails to make all maintenance payments to a creditor treated under § 1322(b)(5)). As a result, despite acting in good faith and relying on the

---

[9] In *Burris*, the Court found that the debtors had not demonstrated sufficient prejudice due to the fact that the debtors were proposing to value the vehicle to its replacement value in the bankruptcy case and pay a reduced interest rate, which was a considerable benefit to the debtors. *Burris*, C/A No. 01-00776-W, slip op. at 5–7. As expressed in this Order, the prejudice suffered by Debtor in the present matter is far more significant than that of the debtors in *Burris*.

[10] While PHH states that it does not oppose Debtor receiving a discharge under § 1328(a) with the condition that it be permitted to collect the disputed post-petition payments, the Court cannot disregard or vary from the clear language of that section which only permits a discharge under § 1328(a) after the debtor has completed <u>all</u> payments under the plan. Further, it appears that the provisions of § 1328(i), which permit a standard discharge under certain circumstances to a chapter 13 debtor who has missed payments to a residential mortgage creditor as a result of COVID-19, are not applicable as the record reflects that Debtor missed these payments as a consequence of PHH's actions and representations.

10

representations and actions of PHH, Debtor would not receive her discharge, the ultimate goal of her bankruptcy case for which she has worked the past five years to obtain and the critical component of her fresh start. Such a position cannot be accepted and would be inequitable to do so as it would require Debtor to suffer the consequences of PHH's actions and errors. The Court notes that PHH offered absolutely no defense for its errors or the consequences they had on Debtor. Considering PHH is a sophisticated, high volume servicer, which purports expertise in its business practices, its cavalier attitude in this matter is significantly concerning and borders on being outrageous. "[E]stoppel is a flexible doctrine that requires consideration of the relative equities between the parties . . . ." *Brumbaugh*, 553 F. App'x at 285 (citing *Pitts v. N.Y. Life Ins. Co.*, 148 S.E.2d 369, 371–72 (S.C. 1966)). Further, the Court rejects PHH's argument that despite the fact that she received several representations and assurances of the opposite from PHH, Debtor could not have "credibly thought [her] account was current" or as this Court interprets it, Debtor should have known better than to believe or accept what PHH representatives communicated to her about the loan.

Further, the Court considers the number of times that PHH made misrepresentations. Specifically, Debtor received multiple written representations from PHH in addition to further verbal assurances from PHH's representatives that the loan was paid several months in advance. The circumstances of the present matter go beyond an innocent mistake or scrivener's error and appears to be more of a systematic failure of PHH to properly account for and apply Debtor's payments on the loan. Considering PHH's misrepresentations were not an isolated incident further supports a finding that PHH's actions are the cause of prejudice to Debtor.

Finally, the Court must consider the delay by PHH in correcting its misrepresentation. More than a year and half passed from when PHH and its representatives made the misrepresentations to Debtor until the filing of the Response, the first indication in the record of the bankruptcy case that

11

PHH was seeking to collect three post-petition payments they had previously indicated did not need to be paid. If PHH had timely acted to correct its misrepresentation, the prejudice to Debtor may have been mitigated, such as through the entry of an agreement to pay the disputed post-petition payments over a period of time in smaller installments or to place those payments at the end of the term of the loan. The only indication in the record of PHH taking any action to mitigate the prejudice it caused is its offer of a streamlined mortgage modification at the hearing on the Response. However, even that offer contained the absurd condition that Debtor must miss an additional future payment to qualify for the mortgage modification. In other words, to resolve the payments that Debtor missed as a result of PHH's own misrepresentations, PHH would require Debtor to miss an additional payment before permitting any resolution. Such efforts are simply too little and too late to mitigate the prejudice suffered by Debtor.

 Rather than take proper and timely action to correct its own errors (even after multiple inquiries by Debtor as to the status of the due date), PHH waited until the conclusion of Debtor's bankruptcy case, on the eve of receiving a discharge to correct its prior statements that Debtor owes these three monthly post-petition payments, leaving Debtor with few options to cure or otherwise address the payments that PHH now states are outstanding. This delay further prejudiced Debtor. PHH's actions have also unnecessarily caused a delay in Debtor's discharge and required Debtor to incur additional attorney's fees and costs to file the present Motion as well as the loss of her own time in attending the hearing on the Motion and investigating and compiling all necessary documents to demonstrate PHH's misrepresentations. Therefore, the Court finds Debtor has satisfied her burden under the third element of equitable estoppel that she has been prejudiced by her reliance on PHH's misrepresentations.

As Debtor has satisfied all elements of the doctrine, the Court finds the application of equitable estoppel is appropriate under these circumstances to preclude PHH's collection of three of the payments alleged to be delinquent in PHH's Response based upon PHH's prior misrepresentations and conduct in this matter. Based upon these findings and the evidence before the Court, the Court determines Debtor is current on her mortgage as of February 3, 2021, the date of the Trustee's Notice of Final Cure.[11] PHH is prohibited from asserting charges, fees or other penalties any alleged delinquency resulting from the payments that were the subject of this Order.

**2. Abuse of Process under § 105**

While the application of equitable estoppel precludes PHH from collecting three post-petition monthly payments, the Court will also consider whether § 105(a) also permits preclusion of collection of these payments under the present circumstances.

Debtor's confirmed plan provides that "[PHH] shall apply trustee payments solely to those designated arrearages, i.e., those arrearages accruing before [May 2016]." Likewise, the confirmed plan also provides that "[PHH] shall apply [non-arrearage payments arising under the agreement paid directly by Debtor] solely to post-petition obligations that accrues during or after [May 2016]." In other words, a critical requirement of the confirmed plan is that PHH is to properly apply payments to the loan, with the chapter 13 trustee disbursements being applied to the prepetition arrearage and Debtor's direct payments being applied to post-petition obligations under the loan. The proper application of payments in accordance with the terms of a confirmed plan is especially important as chapter 13 debtors are contributing all of their disposable income to the plan and lack the financial

---

[11] As previously noted, PHH stated a fourth payment, the February 2021 payment was due in the Response; however, at the time of the Trustee's filing of the Notice of Final Cure Payment, the February 2021 payment was still in its grace period under the terms of the loan. Therefore, it is not being considered in determining whether Debtor was current at the time of the filing of the Trustee's notice. Further, Debtor has testified, which was not disputed, that she has since made that payment.

13

flexibility to address errors in a creditor's accounting. *See also In re Asbill*, C/A No. 98-05819-W, slip op. (D.S.C. Feb. 1, 1999) aff'd C/A No. 3:99-0773-19 (D.S.C. Feb. 23, 2000) (noting that a creditor's lack of diligence to ensure their own records of a debtor's account are correct is not only a problem for the Court but also the debtor).

In the present matter, PHH, through its counsel, admits that payments made during Debtor's bankruptcy were misapplied, resulting in some of the Trustee's disbursements being applied to post-petition obligations rather than the prepetition arrearage as required by the plan. PHH's violations of the confirmed plan resulted in the misrepresentations it made to Debtor. While PHH had ample opportunity to do so, it provided no explanation to the Court as to why this misapplication occurred. Without any explanation, the Court cannot conclude that the misapplication of payments in this matter was an innocent mistake.

Section 105(a) provides that "[n]o provision of [the Bankruptcy Code] providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process." Section 105 provides the Court with broad equitable powers. *See In re Kestell*, 99 F.3d 146, 148–49 (4th Cir. 1996). "While 'abuse of process' under § 105(a) is not defined in the Bankruptcy Code, a few courts essentially define it as maneuvers or schemes which would have the effect of undermining the integrity of the bankruptcy system." *In re Miszko*, __ B.R. __, 2021 WL 1575423, at *3 (Bankr. S.D.N.Y. 2021) (quotations omitted).

By violating the terms of the Court's confirmation order through its misapplication of payments, by repeatedly making false representations to Debtor during the Court of the bankruptcy case, by delaying any action to correct its errors until the conclusion of Debtor's case, by increasing the attorney's fees and costs incurred by Debtor, and by effectively preventing Debtor's timely

14

receipt of a discharge under § 1328(a) absent Court intervention, the combination of PHH's actions has had the effect of undermining the integrity of the bankruptcy system. *See also In re Kilgore*, 253 B.R. 179, 191 (Bankr. D.S.C. 2000) (finding that a creditor's actions were an abuse of process under § 105 when it provided inaccurate information to its counsel and noting that sophisticated creditors who deal on a regular basis with debtor who are in bankruptcy are expected to provide accurate information and promptly account for debtors' payments or at least timely respond to debtors' questions regarding their account). The only proper and equitable resolution to address the unfair prejudice and damage Debtor has suffered as a result of PHH's actions during the bankruptcy case and to uphold the sanctity of the Court's confirmation order is to preclude PHH from collection of the three missed payments at issue in this matter.[12] Based upon the Court's authority granted to it under § 105(a), the Court concludes that PHH's actions were an abuse of process and were in violation of the Court's confirmation order. It is necessary and appropriate to preclude PHH from further collection of the three post-petition payments that it and its representatives advised Debtor not to make.[13]

---

[12] To the extent necessary, the Court would also affirmatively find PHH in contempt for its violation of the confirmed plan in an amount at least equal to payments in dispute as well as consider an award of attorney's fees and costs and punitive damages. *See In re Gillespie*, C/A No. 11-07910-jw, slip op. (Oct. 18, 2017) (awarding damages and attorney's fees pursuant to § 105 for a creditor's violation of the confirmed chapter 13 plan); *In re Berry*, 582 B.R. 886 (Bankr. D.S.C. 2018) aff'd, C/A No. 2:18-444 MBS, slip op. (D.S.C. Mar. 5, 2019) (awarding attorney's fees for violating the terms of a confirmed chapter 13 plan under § 105(a)); *Workman v. GMAC Mortgage LLC (In re Workman)*, 392 B.R. 189, 194 (Bankr. D.S.C. 2007) (noting that "[b]ankruptcy courts within this Circuit have previously held creditors in civil contempt for violating a confirmation and a discharge order").

[13] Debtor also raised arguments that preclusion of the collection of the subject post-petition payments was appropriate under Fed. R. Bankr. P. 3002.1(i) and the Court's holdings in *In re Ferrell*, 580 B.R. 181 (Bankr. D.S.C. 2017), in which the Court found that a mortgage creditor had waived its right to collect on a post-petition arrearage alleged in a response to notice of final cure payment when the mortgage creditor asserted a balance due but failed to appear at the hearing on a motion to determine final cure and payment and did not present evidence to establish its entitled to the amounts alleged in the response. *Id.* at 185–86. While the facts in this case are different than *Ferrell*, it appears *Ferrell* may be applicable to the present matter. However, the Court finds it is not necessary to consider it at this time as both the doctrine of equitable estoppel and the Court's authority under § 105(a) also permit preclusion as discussed in this Order.

**CONCLUSION**

For the foregoing reasons, the Court finds that both the doctrine of equitable estoppel and the Court's authority permitted under § 105(a) to prevent an abuse of process provide authority to preclude PHH, the noteholder or other agent acting on Debtor's loan from collecting three post-petition payments as a result of its misrepresentations to Debtor. As a result, the Court determines that as of the date of the filing of the Trustee's Notice of Final Cure Payment, Debtor has cured her prepetition arrearage under the plan and is current on her post-petition obligations to PHH. Accordingly, PHH is also precluded from collecting any fees, interest, charges, or other penalties added to the loan account as a result of the assertion of non-payment of the subject payments. PHH shall also ensure that Debtor's payment status reflects that she is current on the loan and that such status is accurately reported to applicable credit reporting agencies, including any necessary correction for any previous negative reporting based upon the post-petition payments addressed in this Order.

Finally, as Debtor is current on the loan, PHH shall take all necessary steps to resume Debtor's auto-draft payment for the receipt of her future ongoing monthly obligations under the loan effective in May 2021 unless elected otherwise by Debtor.

**AND IT IS SO ORDERED.**

Columbia, South Carolina
May 7, 2021